Donald Dudley Sheffield was charged by solicitor's complaint with operating a vehicle while there was a .10 percent or more by weight of alcohol in his blood, in violation of § 32-5A-191(a)(1), Code of Alabama 1975. (R. 123). He was found guilty by the jury of this offense (R. 152) and fined $500 and costs. (R. 153).
 Alabama State Trooper James Fant testified that, at approximately 8:30 p.m. on February 11, 1986, he saw a Lincoln Town Car traveling at an excessive rate of speed on U.S. 90 in Baldwin County, Alabama. After Fant stopped this car, the appellant got out. The appellant was unsure about his walk and staggered "slightly". His speech was "slightly" slurred and his eyes were "slightly" glassed. The appellant was very loud and happy.
 Fant informed the appellant as to why he had been stopped and asked him to get in the patrol car. The appellant bumped into the patrol car several times and had trouble opening the car door. Inside the patrol car, Fant noticed a strong odor of alcoholic beverages coming from this appellant.
 On direct examination Fant testified that he arrested this appellant for speeding. For clarity, we quote the record. (R. 49-50)
"BY MR. FLOYD:
"Q. Would you please describe that odor?
 "A. Yes, sir. He had a strong odor of some type of alcoholic beverage about him, fermented beverage.
"Q. What did you do at this point?
 "A. I advised Mr. Sheffield that he was under arrest for speeding.
"Q. And did you do anything else?
 "A. At this point, I talked to a party that was in Mr. Sheffield's car to advise her what was taking place, why I had stopped her — him. I did this outside the car, standing outside my door. I then got back in the car to talk with Mr. Sheffield again."
 Officer Fant then advised the appellant's female companion as to what was going on and advised this appellant, Mr. Sheffield, that he wanted him to take the field sobriety test. (R. 51). Officer Fant then told this appellant that he needed to take him to the Daphne Police Department to administer an Intoxilizer test and did so approximately 25 minutes later.
 Over objection, through appellant's Motion in Limine and several objections on the record, the result of this test was admitted into evidence. The test result showed .20% alcohol content.
 I
Appellant's counsel had filed a pretrial Motion in Limine seeking under Morton v. State, 452 So.2d 1361 (Ala.Cr.App. 1984) and Boyd v. City of Montgomery, 472 So.2d 694
(Ala.Cr.App. 1985) to prevent the *Page 6 
results of the Intoxilizer test from being presented into evidence before the jury. Appellant's counsel repeatedly objected and called the trial court's attention, on several occasions, to the foregoing cases.
On cross-examination Officer Fant's testimony is as follows:
 "Q. And you've testified that Mr. Sheffield left that vehicle and walked back to your vehicle or somewhere in close proximity and the two of you talked; is that correct?
"A. Yes, sir.
 "Q. A later occasion he sat himself on the front 'seat of your trooper car and you had a discussion; is that correct?
"A. Yes, sir.
 "Q. And it was at that time that you informed him the nature of your stop was for speeding; is that correct?
"A. Yes, sir.
 "Q. It was at that time you made a notation on your log as to the time of that stop; is that correct?
"A. No, sir, not at that time.
 "Q. Okay. Now, the arrest for Mr. Sheffield was for the offense of speeding and for speeding alone; is that correct?
"A. Yes, sir.
"Q. No other charge?
"A. At that time, no, sir.
 "Q. All right. You never at any time arrested Mr. Sheffield for the offense of driving under the influence, did you, sir, at that time?
"A. Talking about at the scene?
"Q. Yes, sir.
"A. No, sir, I did not." (R. 69-70)
 On this appeal the issue is whether a motorist must be arrested for DUI before being taken into custody and required to submit to a chemical test for intoxication. In Hays v. City of Jacksonville, this day decided, 518 So.2d 892 (Ala.Cr.App. 1987), Presiding Judge Bowen stated the following:
 "Under Alabama's Chemical Test for Intoxication Act (Implied Consent Law) Ala. Code 1975, § 32-5-191 et seq., a motorist must have been 'lawfully arrested' before any chemical test to determine intoxication is conducted in order to authorize the admission into evidence of the test results. Ex parte Love [Ms. 86-128, June 5, 1987], 513 So.2d 24 (Ala. 1987) [on remand, 513 So.2d 31
(Ala.Cr.App. 1987)]. The issue in this case is whether the defendant was properly arrested.
"Ala. Code 1975, § 32-1-4(a) provides:
 " '(a) Whenever any person is arrested for a violation of any provision of this title punishable as a misdemeanor, the arresting officer shall, . . . take the name and address of such person and the license number of his motor vehicle and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice, . . . such officer shall thereupon and upon the giving by such person of a sufficient written bond, approved by the arresting officer, to appear at such time and place, forthwith release him from custody.' (Emphasis added.)"
" 'The clear import of this section is that the police have no authority to take a motorist into custody and then require him to go to the local stationhouse when that motorist has committed a misdemeanor traffic violation but is willing to sign the summons to court.' Morton v. State, 452 So.2d 1361,1364 (Ala.Cr.App. 1984). Morton involved a prosecution for the possession of cocaine discovered after the defendant was stopped for speeding. The issue was 'whether the police had the authority to impound Morton's vehicle.' 453 So.2d 1364. In that case the application of the Implied Consent Law was neither raised nor considered. The validity of the arrest, however, was directly in issue since 'the propriety of the impoundment [was] . . . grounded on the propriety of the initial arrest.' Id. This court held that '[e]xcept for the exceptions provided by Section 32-1-4(b), a person arrested for a misdemeanor traffic violation is not subject to further detention for that offense once the arresting officer has obtained the necessary information and given the motorist the "summons or notice" to appear.' *Page 7 
452 So.2d at 1364 (quoting Daniels v. State, 416 So.2d 760,765 (Ala.Cr.App. 1982)."
"Section 32-5-192(a) provides in pertinent part:
 " 'Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, subject to the provisions of this division, to a chemical test or tests of blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while under the influence of intoxicating liquor.
The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor.' "
 "Section 32-5A-191 makes driving under the influence a criminal offense. Section 32-5A-191(g) provides: 'A person who has been arrested for violating the provisions of this section shall not be released from jail under bond or otherwise, until there is less than the same percent by weight of alcohol in his blood as specified in subsection (a)(1) hereof [0.10 percent].' "
 "In Maffett v. Roberts, 388 So.2d 972, 977 (Ala. 1980), the Alabama Supreme Court made it clear that '[a]n arrest for one of the enumerated offenses furnishes the implied consent under the statute.'
 "The 'enumerated offenses' to which the Maffett court referred are those (1) which arose out of the acts allegedly committed while the motorist was driving under the influence on the public highways of the state and (2) those for which the motorist was lawfully arrested. § 32.5.192(a)."
 In the instant case the charge, according to Officer Fant, against this appellant was "speeding". This was a result of having pursued this appellant and having placed a "radar gun" on the appellant's vehicle.
 Speeding is a misdemeanor traffic infraction. See §§ 32-5A-170-171, Code of Alabama 1975.
 Custodial arrest is not authorized for speeding only. Buchanan v. City of Auburn, 512 So.2d 145 (Ala.Cr.App. 1987). Ex Parte Love, supra.
 There are certain exceptions which allow a custodial arrest for a misdemeanor traffic offense pursuant to the provisions of § 32-1-4(b). These are as follows:
 "(a) Any person arrested and charged with an offense causing or contributing to an accident resulting in injury or death to any person";
 "(b) Any person charged with driving while under the influence of intoxicating liquor or of narcotic or other drugs";
 "(c) Any person whom the arresting officer shall have good cause to believe has committed any felony." Ala. Code § 32-1-4(b) (emphasis added).
 The clear language of § 32-1-4(b) requires that in order to fall within the custodial arrest exception of § 32-1-4(a), a motorist must be charged with DUI. This is true unless one of the other exceptions would be applicable, such as an accident resulting in personal injury or where the officer had probable cause to believe the motorist had committed a felony. Thus, there must be an actual arrest for DUI based on probable cause to arrest and such must be lawful within the meaning of § 32-1-4 Code of Alabama, 1975. Ex Parte Love, 513 So.2d 24
(Ala. 1987).
 It therefore follows that this appellant's cause must be reversed and remanded as the appellant was arrested for speeding and required to submit to a breath test later in Daphne, Alabama. He was not formally charged with DUI until the results of the Intoxilizer were available.
In view of the foregoing, the admission into evidence of the results of the blood alcohol test of Sheffield was reversible error. Trooper Fant was not authorized to detain Sheffield following his arrest *Page 8 
for speeding only. (Authorities herein cited).
 Because the results of the Intoxilizer 5000 test were admitted into evidence, this cause is hereby reversed and remanded.
REVERSED AND REMANDED.
All the Judges concur.